STATE ex rel. CITY OF ST. PAUL v. DISTRICT COURT OF RAMSEY COUNTY and Another.[1]

May 15, 1903.

Nos. 13,453—(32).

## Local Improvement—Petition for New Sidewalk.

> Section 5, title 3, chapter 6, Home Rule Charter of St. Paul, providing that no improvement in the nature of grading streets or laying new sidewalks shall be ordered by the public authorities until at least one-third of the interested property owners petition therefor, construed, and *held* to refer to original improvements of the kind stated, and not to repairs or subsequent relaying of a sidewalk with new material.

Writ of certiorari issued from the supreme court upon relation of the city of St. Paul, to review a judgment of the district court for Ramsey county, Bunn, J., in favor of objecting land owners, in proceedings by the city treasurer for the enforcement of an assessment upon abutting real estate for constructing, relaying and repairing cement sidewalks. Judgment reversed.

*J. C. Michael,* for relator.

The grading of streets and the laying of new sidewalks thereon are both initial proceedings in their improvement, and coupling them together seems to indicate clearly that the framers of the charter had only in mind the first or original walk laid upon the street and did not intend to include relaying of walks. This seems all the more apparent when it is borne in mind that out of all the numerous street improvements the municipality is authorized to make, these are the only two instances in which any petition is required. Is it not true that the whole difficulty in construing this language of the charter arises out of a confusion as to what the adjective "new" should modify? The court below was evidently of the opinion that it was descriptive of the material with which the walk was relaid, whereas it is clearly used in its broad sense, as applying to things. It is not a question of the sidewalk being new to itself or of new material, but of being "new" or

"novel" or of "recent origin" to the street, which could only be the case with the first walk constructed on a street.

The term "sidewalk" as used is generic, and may be of new or old, or any of many kinds of material, and when the walk is considered as an entity upon the street, its relaying, whether with the same or different material, is but a continuation of such previous entity, and is not in any sense "new" or "novel" or of "recent origin" as related to the street.

*J. M. Hawthorne* and *Lloyd Peabody*, for respondents.

The term "new" in its ordinary acceptance when applied to the same subject or object is the opposite of "old." 12 Am. & Eng. Enc. 489.

The word "new" is the most apt and fit word which could have been adopted to express the kind of an improvement which results in the change of material from old and worn material to that which is wholly unused and unworn. It is the expression which first comes to the mind in forming the idea and would be universally and instantly applied to such structures by all English speaking men. The word "new" is clearly used in this proviso in opposition to the word "old," and not in opposition to the word "former" or "first."

A sidewalk which is to be repaired, only, must needs be worn or used. It is to this character of improvement, a sidewalk needing repair, we submit, that the word "new" is descriptively opposed. The framers of the charter evidently meant by said proviso a "new" physical object and did not mean by such use of that term to designate merely the relative order of two improvements, one subsequent to the other in point of time.

So construed the use of that word in the proviso is common and grammatical, and in view of the subject-matter, most conformable to reason and justice; but to give it the signification contended for by appellant, that is forcing it to express order in point of time, is to make it an unusual, inept and inappropriate vehicle to express a simple idea, and which would be much more correctly expressed by some other word or phrase.

BROWN, J.

Certiorari to review the judgment of the district court of Ramsey county in the matter of proceedings on the part of the municipal authorities of the city of St. Paul to assess the cost and expenses of a sidewalk to abutting property.

The facts are short. It appears that some time prior to the date of the improvement here involved the authorities of the city of St. Paul had ordered the construction of a sidewalk of wooden material along the property in question, which order was duly complied with. Thereafter the sidewalk became out of repair, and repairs were necessary to make it safe and suitable for public use. The authorities ordered it replaced with a cement walk, deeming the public welfare to justify an improvement of that kind. Notice accordingly was given the property owners, requiring them to put in a new walk, but they failed to do so, whereupon the walk was laid by the city; and this proceeding is for the purpose of assessing the cost and expense thereof to the owners of the abutting property, as provided by the city charter.

The only question involved is the construction of section 5, title 3, chapter 6, Charter of St. Paul, which reads as follows:

"Provided, however, that no improvement in the nature of grading of streets or laying of new sidewalks, shall be ordered, until at least one-third of the owners of the property fronting thereon, according to the transfer books in the office of the county auditor, at the date of the preliminary order, shall have petitioned therefor in writing."

It is the contention of relator that this provision should be construed to refer to sidewalks originally ordered constructed by the city, and not to sidewalks relaid or repaired; that, as to the latter, no petition of the property owners is necessary to give the city jurisdiction to act; while respondents, the property owners, contend that the provision of the charter should be construed to refer to a new sidewalk, in point of fact; that, if a sidewalk once constructed becomes out of repair to such an extent as to require it to be replaced with a new one, a petition of one-third of the property owners affected thereby is necessary to authorize such action by the authorities.

Which of these constructions is the proper one, is the question for solution. Either might be adopted, and be plausible and consistent with its language; but the intention of the framers of the charter must be looked to, and, with that in mind, it is clear that the provision should be construed to require a petition of property owners for sidewalks originally constructed, only. Its language is that no improvement in the nature of grading streets or laying new sidewalks shall be ordered until petitioned for by one-third of the property owners affected thereby. Street improvements, such as grading, leveling up, and laying new sidewalks, are acts usually coincident; and it is evident that the framers of the charter intended by this provision to provide for original improvements of this kind, and not to subsequent changes in the grade of streets, or to repairs or subsequent relaying of sidewalks with new material. It is true that the removal of a sidewalk, whether by reason of its being out of repair or other cause, and its replacement by one of different material, results, in one sense, in a new sidewalk; but a construction of the charter which would lead to the conclusion that a petition of interested property owners was essential in such case would not be in harmony with its evident purpose.

The general provisions of the charter confer upon the city authorities the exclusive care and control of the streets and sidewalks of the city, and the municipality is under legal duty and obligation to keep and maintain the same in good repair for public use. Under the provision of the charter under consideration, it is within the power of the property owners—at least one-third of them—to say when new streets shall be opened and graded, and sidewalks ordered laid and constructed; and, until the municipality is moved by them to that end, no such improvements can be ordered. But when a petition therefor is once presented to and acted upon by the municipality, the streets and sidewalks thus involved come at once under the jurisdiction and control of the municipal officers, the legal obligation to keep them in reasonably good repair for public use arises, and they should, to enable them fully to perform that duty, possess the power to make thereafter such repairs or improvements as prudence and the welfare of the

municipality may dictate to be necessary. Wilkin v. Houston, 48 Kan. 584, 30 Pac. 23. This duty or obligation is absolute, and to be performed independently of and without regard to whether the property owners consent or not; and no petition from them should be required. The framers of the charter clearly could not have intended to require one. The question whether any such improvement is necessary or demanded by the public welfare or convenience is one addressed to the discretion of the municipal authorities, with the exercise of which the courts will not interfere.

It is probable that public authorities often unnecessarily order the construction of sidewalks in remote parts of a large city, the cost of which is borne by the owners of abutting property, thus casting an additional burden upon the already overburdened taxpayer; but whether such action is justified or reasonably necessary in any particular instance is not for the court to say. We are concerned in the case at bar only with the question whether the terms of the charter we have quoted limit the right of the authorities to replace an old sidewalk with a new one to occasions when petitioned to do so by the property owners. Our construction of the charter is that the authorities may act without such petition. In reaching this conclusion, we give to the charter what seems to us a reasonable meaning—one that will in no way result to the detriment of the citizens, or hamper or detrimentally interfere with the municipality in the performance of its duty to the public in keeping the streets and sidewalks in repair. But if we are wrong in that construction, it is clear that the petition is expressly dispensed with by Laws 1893, c. 214.

Judgment reversed.