J. PIERCE WOLFE v. CITY OF MOORHEAD.[1]

May 11, 1906.

Nos. 14,817—(195).

**Amendment of Municipal Charter.**

The requirements of the constitutional amendment, allowing certain cities and villages to frame and amend their own charters under specified conditions, are satisfied as to publication by the publication of a proposed charter amendment begun in three newspapers conforming to the statutory standard and continued in every issue of such newspapers from the date of first publication until the time of holding the election by which is determined whether or not the amendment shall be adopted, provided that the charter amendment be published for a period of at least thirty days.

**Same—Publication.**

The actual publication in this case for thirty one days in one daily newspaper, and for at least thirty two days in five consecutive issues of two weekly newspapers, is *held* to conform to law.

**Census.**

The fifth decennial census of Minnesota went into legal effect upon its compilation and publication by the superintendent of the census, and not upon the deposit of the enumeration in his hands.

**Elections—Census.**

In this case it is *held* that a charter amendment election, held after the enumeration was delivered to the superintendent, but before its compilation and publication by him, was governed by the laws applying to the cities whose class was determined by the previous census.

**Assessment for Local Improvement.**

A municipal corporation has the power to order and levy a local assessment without a preliminary petition by property owners affected by such improvement.

Action in the district court for Clay county to restrain defendant city from proceeding, under an alleged void amendment of the city charter, to construct any sidewalk or other improvement upon plaintiff's property. The case was tried before Baxter, J., who found in favor of defendant, denying an injunction, from which order plaintiff appealed. Affirmed.

[1]Reported in 107 N. W. 728.

98 M.—8

*E. E. Sharp*, for appellant.

*James M. Witherow*, for respondent.

JAGGARD, J.

On September 27, 1905, the charter commission of the city of Moorhead proposed an amendment to the city charter, authorizing the city council to order local improvements without the petition of the property owners affected. That amendment was adopted at a special election held under the provisions of section 78, G. S. 1894, providing for elections in cities of less than four thousand inhabitants. The returns were duly canvassed; the amendment was declared adopted; the city council, acting under the powers which it purported to grant to them, proceeded to order certain improvements upon property owned by this appellant. This action was brought by him to secure an order restraining the city council from proceeding with this improvement. On a case submitted to the court by stipulation, upon the allegations contained in the pleadings, the trial court refused to grant an injunction.

1. Chapter 280, p. 507, Laws 1897, proposed an amendment to section 36 of article 4 of the constitution allowing certain cities and villages to frame their own charters under specified conditions. This enabling act was duly adopted by the legal voters of the state and made a part of the constitution. Chapter 351, p. 462, Laws 1899, enacted in pursuance of it, embodies the wording and express requirements of the enabling act and constitutional amendment, in regard to the publication of proposed charter amendments, as follows:

> Such charter so deposited may be amended by a proposal therefor, made by said board [a board of fifteen commissioners] published for at least thirty days in three newspapers of general circulation in such city or village, and accepted by three-fifths of the qualified voters of such city or village, voting at the next election, and not otherwise; but said charter shall always be in harmony with and subject to the constitution and laws of the state of Minnesota.

The proposed amendment to the charter of Moorehead was published in twenty seven issues of a daily newspaper during a period of

thirty one days, and in five issues of two weekly newspapers. The publication in the daily newspaper was clearly correct. The proposed amendment was published in every daily issue of the paper during the period of thirty days. Sewall v. City of St. Paul, 20 Minn. 459 (511) ; Carpenter v. City of St. Paul, 23 Minn. 232.

With respect to the publication in the weekly newspapers, counsel for the plaintiff insists that the constitutional amendment previously quoted requires publication by them thirty times; that is, for a period of thirty weeks. This construction is obviously unreasonable. The statute requires that the charter be published for at least thirty days in three newspapers of general circulation. It does not require that the publication be made in three daily, weekly, or monthly newspapers; nor that the notice shall be published thirty times. A weekly newspaper conforms to the statutory enumeration of qualifications for the insertion of legal publications. G. S. 1894, §§ 7993, 7995. The requirements of the constitutional amendment are satisfied by the publication of the charter amendment, begun in three newspapers conforming to the statutory standard on a particular day and continued in every issue of such newspapers from the date of first publication until the time of holding the election, provided that the charter amendment be published for a period of at least thirty days. Without reference to the calendar for the particular year, it is certain that this publication in the weekly newspapers for five weeks covered a period of at least twenty nine days. The last publication was on October 27. If the election had occurred on October 28, the publication might not have been sufficient. However, in fact, the election occurred on October 31. The publication, therefore, covered a period of at least thirty two days. We are accordingly of opinion that the court was justified in its conclusion that the publication conformed to the law.

It is to be noted in this connection that Laws 1903, p. 353, c. 238, § 6, provided for publication in accordance with the constitution; that Laws 1905, p. 387, c. 253, § 1, provided for publication once in three newspapers of general circulation, or, if there be not three newspapers, then in such less number as there may be, at least twenty days prior to such election. It is clear that it was impossible for the legislature to amend the constitutional provision. Therefore that part

of the law of 1905 referred to must be invalid. Section 756, c. 9, R. L. 1905, provides that proposed amendments to charters

> Shall be published for at least four weeks in not exceeding three newspapers of general circulation in such city.

It would not appear that publication for four weeks, which, under the most favorable circumstances, could result in publication for a period of at most twenty eight days is publication for at least thirty days as required by the constitutional amendment. It is therefore not obvious how the provisions of section 756 can be sustained.

2. Plaintiff also insists that the charter amendment was invalid and void because the election was illegally held, in this: that as a matter of fact the polls were kept open from nine a. m. until five p. m. under laws applicable to cities having less than four thousand population, whereas they should have been open from seven a. m. to six p. m. under laws applicable to cities having more than four thousand population. The fifth decennial census, taken in accordance with chapter 124, p. 156, Laws 1905, gave Moorehead a population of over four thousand. The plaintiff argues that, inasmuch as the enumeration was required to be completed on or before July 1, and to be placed in the hands of the superintendent of the census not later than July 10, therefore the election held in October was governed by statutes applicable to cities of more than four thousand inhabitants. That enumeration did not constitute the census in law; on the contrary, it was but a step in its creation. The census went into legal effect upon its compilation and publication by the superintendent. Section 18. Until that time, the various municipal corporations of the state were governed by the laws applicable to cities of the class determined by the previous census.

3. It is urged, finally, that the city council cannot be granted power to levy assessments as proposed by the amendment under consideration. The argument is that section 1, article 9, of the constitution, delegates to the legislature only the authority to prescribe the manner in which municipalities may levy assessments for local improvements and that the inhabitants of a municipality cannot vest authority in the city council to order such improvements. That section of the constitution must, however, be construed in connection with the amendment

to section 36 of article 4, previously quoted in full, and in connection with the familiar principle that a municipal corporation is a part of constitutional government and that to it may be delegated power to legislate on local matters, including the ordering and levying of local assessments. State v. District Court of Hennepin County, 33 Minn. 235, 22 N. W. 625; Davis v. Board of Co. Commrs. of St. Louis County, 65 Minn. 310, 312, 67 N. W. 997, 33 L. R. A. 432, 60 Am. St. 475; Bauman v. Ross, 167 U. S. 548, 549, 17 Sup. Ct. 966, 42 L. Ed. 270; County of Mobile v. Kimball, 102 U. S. 691, 26 L. Ed. 238; Walston v. Nevin, 128 U. S. 578, 9 Sup. Ct. 192, 32 L. Ed. 544; Appeal of Piper, 32 Cal. 530; Owen v. City, 91 Iowa, 190, 59 N. W. 3. Construing these constitutional provisions together with the legislation executing them, we are of opinion that the trial court properly concluded that the powers granted the city council by the amendment and the proceedings thereunder were not invalid and void for the reasons just set forth.

Plaintiff further insists that there is a vast difference between making the improvements at the caprice of the council and making them when a majority of the property owners affected have petitioned that such improvement should be made. The cases already cited, however, have sustained the exercise of the power to order and levy local assessments by municipal corporations within very wide limits. This court has held—and upon reflection it would appear upon unquestionable reasoning—that a municipality may levy an assessment without preliminary petition by property owners. State v. District Court of Ramsey County, 95 Minn. 183, 103 N. W. 881.

Order affirmed.